IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Time 2 Shine BMX LLC, | ) | Case No. 2:25-cv-08265-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **TEMPORARY RESTRAINING ORDER** |
| | ) | |
| Matthew McEvoy and | ) | |
| Strada Group, LLC | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**THIS MATTER** is before the Court on Plaintiff Time 2 Shine BMX LLC's *ex parte* motion for a temporary restraining order to freeze bank accounts and other assets held by or for Defendants Matthew McEvoy and Strada Group, LLC, or any other entity owned or controlled by McEvoy or Strada Group, LLC. The Court has jurisdiction to hear this matter based upon diversity and the parties' express agreement to litigate in South Carolina. The Court hereby **GRANTS** the motion and issues this **TEMPORARY RESTRAINING ORDER**.

### I.     Background

Plaintiff's verified complaint sets forth facts and attaches documents showing that this case involves an apparent fraudulent sale of a business[1] by Mr. McEvoy, and one of his entities, Strada Group, LLC. (Dkt. 1, ¶ 1). McEvoy had filed for bankruptcy prior to the sale, which was notably his third bankruptcy case filed within eight years. (Dkt. 1, ¶¶ 8-9; Dkt. 1-1). Review of McEvoy's most recent bankruptcy petition shows that he had represented under oath and penalty of perjury

---

[1] McEvoy's business, known as "Time 2 Shine" and variations thereof, focused on marketing and selling BMX bikes and parts, mostly online through a website, www.time2shineBMX.com. (Dkt. 1, ¶ 7).

1

to the federal bankruptcy court, that all of his assets combined, including the business at issue, which he claimed to own, were worth less than $50,000, that his business generated relatively little income, and he made no mention of his entity, Strada Group, LLC. (Dkt. 1, ¶ 8; Dkt. 1-1). The federal bankruptcy court relied on McEvoy's sworn representations and approved his bankruptcy plan, which benefited him for some time. (Dkt. 1, ¶ 12; Dkt. 1-5). It appears that McEvoy, in contravention of his representations to the bankruptcy court, then marketed his business with an online broker (WebsiteClosers.com) for sale for $800,000 and ultimately sold it to Plaintiff for $600,000. (Dkt. 1, ¶¶ 10, 11, 13; Dkt. 1-2; Dkt. 1-3; Dkt. 1-4). In so doing, it appears that McEvoy did not disclose his immediately preceding, inconsistent bankruptcy filings, and made numerous false representations and warranties to Plaintiff about the business in an offering memorandum and asset purchase agreement (including about litigation and court orders, valuation, ownership, solvency, financials, customers, and suppliers, which agreement McEvoy signed both individually and as the managing member of Strada Group, LLC). (Dkt. 1, ¶¶ 10, 11, 13; Dkt. 1-2; Dkt. 1-3; Dkt. 1-4). It appears that after wiring the purchase money to Strada Group, LLC, per McEvoy's wiring instructions, Plaintiff learned that the state of the business was not as represented and warranted, and as Plaintiff now believes, essentially worthless, as McEvoy had affirmed to the federal bankruptcy court. (Dkt. 1, ¶¶ 14-17). In a recent meeting with a private investigator hired by Plaintiff, who gave an affidavit appearing in the record, McEvoy apparently indicated that he was unwilling to return Plaintiff's purchase money. (Dkt. 1-8). And just days later, it further appears that he reacted to being confronted by filing a motion to dismiss his own bankruptcy case, citing "his own personal reasons," without amending or otherwise addressing his prior sworn representations, and recognizing that "the fact of filing will not be erased from the court's records."

(Dkt. 1-6; Dkt. 1-8). The bankruptcy court granted his motion and entered an order dismissing his case. (Dkt. 1-7).

Plaintiff then immediately brought this action in law and equity seeking to rescind the contract and unwind the transaction carried out under the asset purchase agreement, and recover or impose a constructive trust over its purchase money, a sum-certain in the amount of $600,000, among other relief, detailed in the verified complaint. (Dkt. 1). Four claims are asserted in the verified complaint: fraud, negligent misrepresentation, breach of contract, and constructive trust. (Dkt. 1). To preserve Plaintiff's ability to obtain the primary relief sought, the return of Plaintiff's own purchase money, Plaintiff also filed the instant motion for a temporary restraining order against McEvoy and his entity, Strada Group, LLC, freezing and restraining them from depleting or transferring Plaintiff's purchase money or other assets into which Plaintiff's purchase money has been converted or may be traced or attached. (Dkt. 4). Plaintiff further requested that the Court proceed with issuing the temporary restraining order without advance notice to McEvoy, so as to not alert and afford him of the opportunity to reactively frustrate the purpose of this motion by depleting or transferring funds or assets before the motion can be heard, which he would otherwise appear likely to do, in view of his fraudulent acts, breaches of contract, admitted insolvency, repeated bankruptcies, unwillingness to return the purchase money, and reactive dismissal of his own bankruptcy case. (Dkt. 4).

## II.    Legal Standard

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of a temporary restraining order. Rule 65, FRCP. A temporary restraining order is a drastic remedy that serves an exceedingly narrow purpose. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). It exists only to preserve the status quo until a preliminary injunction hearing can

be held. *Id*. Rule 65(b)(1) provides that a temporary restraining order can be issued without notice if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Rule 65(b)(l), FRCP. Additionally, Rule 65(c), FRCP, requires the movant to "give security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Rule 65(c), FRCP.

The standard for granting a request for a temporary restraining order and entering a preliminary injunction are identical. *See Commonwealth of Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994). In order for such injunctive relief to be granted, the movant must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All four requirements must be satisfied. *Real Truth About Obama, Inc., v. Federal Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010).

In connection with granting a motion for a temporary restraining order or preliminary injunction in an action based in law and equity, seeking equitable remedies, including recission and a constructive trust, such as this one, federal courts have the authority to freeze bank accounts and other assets. *See USA. v. Oncology Associates*, 198 F.3d 489, 492, 494 (4th Cir. 1999) (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940)); *Hayward Indus., Inc. v. Ningbo C.F. Electronic Tech Co.*, 2024 WL 1587024, at *1–2 (W.D.N.C. April 11, 2024).

### III.     Discussion

The Court first considers the requirements of Rule 65(b)(1), FRCP, including its subparts (A) and (B).  With respect to subpart (A), Plaintiff has submitted a verified complaint and an additional supporting affidavit, together with its motion for a temporary restraining order, as summarized above, showing that immediate and irreparable injury, loss, or damage will result to Plaintiff before Defendants can be heard in opposition.  With respect to subpart (B), Plaintiff's motion for a temporary restraining order sets forth the reasons why notice has not been given and should not be required, and Plaintiff's counsel separately filed a certificate stating the same. Plaintiff's counsel certified that he has not made any efforts to give notice of the motion to Mr. McEvoy or his entity, Strada Group, LLC.  Plaintiff's counsel further certified, that rather, he believes that such notice should not be required and should not be given for good reason, so as to not alert and afford McEvoy of the opportunity to reactively frustrate the purpose of the motion by depleting or transferring Plaintiff's wired purchase money at issue or other assets into which such funds may have been converted before the motion can be heard, because it otherwise appears likely that McEvoy will attempt to deplete or transfer Plaintiff's wired purchase money before it can be frozen, making it unreachable or uncollectable, in view of McEvoy's apparent fraudulent acts, breaches of contract, admitted insolvency, repeated bankruptcies, unwillingness to return the purchase money, and reaction of belatedly dismissing his own bankruptcy case immediately after being initially confronted, as shown and further detailed in the verified complaint and additional supporting affidavit.

Plaintiff's and its counsel's concern is well-founded. "Absent an *ex parte* TRO – that is, if the Court required the parties to litigate Plaintiff's motion for asset restraining order without first preserving the status quo – Defendants would have an opportunity to move assets beyond this

Court's jurisdiction and thus nullify a restraining order's effect even before its entry." *Hayward*, 2024 WL 1587024, at *2.

Satisfied that Plaintiff's *ex parte* request for a temporary restraining order is proper under Rule 65(b)(1), FRCP, the Court turns to the four-factor test set forth in *Winter*, 555 U.S. at 20.

**(1) Plaintiff is likely to succeed on the merits.**

The Court finds that Plaintiff is likely to succeed on the merits as to each of its four claims. Plaintiff's verified complaint and the additional supporting affidavit set forth the supporting facts and attach the supporting documents pertaining to the sale of the business and the later discovered bankruptcy. McEvoy cannot dispute his own sworn representations to the federal bankruptcy court.

### (a) Fraud

"The elements of fraud are: a representation; its falsity; its materiality; knowledge of its falsity or a reckless disregard of its truth or falsity; intent that the representation be acted upon; hearer's ignorance of its falsity; hearer's reliance on its truth; hearer's right to rely; and hearer's consequent and proximate injury." *First State Sav. & Loan v. Phelps*, 299 S.C. 441, 446-47, 385 S.E.2d 821, 824 (1989). Here, as supported by the verified complaint and its exhibits, it appears that McEvoy, personally and as the managing member of Strada Group, LLC, made representations pertaining to the Time 2 Shine Business in the offering memorandum and the asset purchase agreement (including about litigation and court orders, valuation, ownership, solvency, financials, customers, and suppliers); which were false and material; as McEvoy knew or recklessly disregarded, in view of his own inconsistent bankruptcy filings, admitting that the business was his and was essentially worthless and that he was insolvent; with the intent that Plaintiff act upon the representations and send a wire for $600,000 for the essentially worthless

6

business backed by warranties and indemnification from a repeated, habitual bankrupt that were likewise essentially worthless; while Plaintiff did not know about the bankruptcy filings and other concealed information, including in the e-mail accounts and other business records that McEvoy refused to transfer as required; and Plaintiff was entitled to rely the offering memorandum and the asset purchase agreement; and damages proximately resulted from Plaintiff's reliance on McEvoy's said false representations, including but not limited to the loss of Plaintiff's purchase money, $600,000, in addition to closing costs and other expenses.

### (b) Negligent Misrepresentation

"The key difference between fraud and negligent misrepresentation is that fraud requires the conveyance of a known falsity, while negligent misrepresentation is predicated upon transmission of a negligently made false statement." *Armstrong v. Collins*, 366 S.C. 204, 219-20, 621 S.E.2d 368, 375-76 (Ct. App. 2005) (internal quotations and citations omitted); *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 473-74, 581 S.E.2d 496, 504 (Ct. App. 2003) (stating the elements for negligent misrepresentation: "(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation"). Here, even if McEvoy were to take the dubious position that he did not know that his representations to Plaintiff were false (in view of his inconsistent representations to the bankruptcy court), at best, his misrepresentations were negligent. The rest of the elements of negligent misrepresentation are satisfied similarly to the claim for fraud. As supported by the verified complaint and its exhibits, it appears that McEvoy, personally and as the

7

managing member of Strada Group, LLC, made representations pertaining to the Time 2 Shine Business in the offering memorandum and the asset purchase agreement (including about litigation and court orders, valuation, ownership, solvency, financials, customers, and suppliers); which were false and material in view of his own inconsistent bankruptcy filings, admitting that the business was his and was essentially worthless and that he was insolvent; he had a pecuniary interest in making such statements to induce Plaintiff to purchase the business from him; he owed a duty of care, by contract and law, to communicate truthful information; he breached that duty by failing to exercise due care; Plaintiff justifiably relied upon the representations and wired $600,000 for the essentially worthless business backed by warranties and indemnification from a repeated, habitual bankrupt that were likewise essentially worthless; while Plaintiff did not know about the bankruptcy filings and other concealed information, including in the e-mail accounts and other business records that McEvoy refused to transfer as required; and Plaintiff was entitled to rely the offering memorandum and the asset purchase agreement; and damages proximately resulted from Plaintiff's reliance on McEvoy's said false representations, including but not limited to the loss of Plaintiff's purchase money, $600,000, in addition to closing costs and other expenses.

### (c) Breach of Contract

"The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48, 686 S.E.2d 200, 202 (Ct. App. 2009). Here, as supported by the verified complaint and its exhibits, it appears that a contract existed, the asset purchase agreement, and McEvoy and Strada Group, LLC were both parties thereto; they breached the express provisions of that contract, by making representations and warranties that were not true (including about litigation and court orders, valuation, ownership, solvency, financials, customers, and suppliers) and not transferring e-mail

accounts and other assets purportedly sold; causing damages to Plaintiff in the amount of the purchase price, $600,000, in addition to closing costs and other expenses.

### (d) Constructive Trust

"A constructive trust arises entirely by operation of law without reference to any actual or supposed intentions of creating a trust." *SSI Med. Servs. v. Cox*, 301 S.C. 493, 500, 392 S.E.2d 789, 793 (1990).  It "arises whenever a party has obtained money which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it." *Id*. at 500, 392 S.E.2d at 793-94; *see also Dye v. Gainey*, 320 S.C. 65, 463 S.E.2d 97 (Ct. App. 1995) (constructive trust results from fraud, bad faith, abuse of confidence, or violation of fiduciary duty which gives rise to obligation in equity to make restitution). "Fraud is usually an element essential to the establishment of a constructive trust; though, it need not be actual fraud." *Smith v. South Carolina Retirement System*, 336 S.C. 505, 529, 520 S.E.2d 339 (Ct. App. 1999) (citing *Lollis v. Lollis*, 291 S.C. 525, 354 S.E.2d 559 (1987)).  Here, Plaintiff's above-discussed claims for fraud and negligent misrepresentation and breach of contract support the imposition of a constructive trust over Plaintiff's purchase money, $600,000, inequitably obtained by McEvoy.

### (2) Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief.

In the absence of temporary relief, in view of McEvoy's above-discussed apparent fraudulent acts, breaches of contract, admitted insolvency, repeated bankruptcies, unwillingness to return the purchase money, and reactive filing in bankruptcy court, McEvoy appears likely to attempt to use and deplete or transfer and hide the $600,000 of Plaintiff's purchase money that he fraudulently induced Plaintiff to wire before Plaintiff learned about the true state of the business and discovered McEvoy's bankruptcy filings.  *See Oncology Associates*, 198 F.3d at 492, 494

(holding that "the district court had authority to enter a preliminary injunction freezing the defendants' assets . . . [the plaintiff] has alleged that fraudulent transfers have occurred and is prepared to present evidence in support of these allegations. The request has been made that the Court impose a constructive trust. Significant issues are therefore presented by the equitable aspects of this suit. Under these circumstances, the conditional freeze of assets imposed by the TRO is an appropriate exercise of this Court's equity jurisdiction.") (citing *Deckert*, 311 U.S. at 290 (authorizing an injunction freezing assets to aid in granting the ultimate equitable relief of rescission)).; *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("[I]rreparable harm may still exist where . . . 'damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.'"); *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003), abrogated on other grounds by *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) (holding that preliminary relief securing assets may fulfill the "traditional office of a preliminary injunction . . . to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits."); *Hayward*, 2024 WL 1587024, at *2 ("The harm Plaintiff identifies – inability to collect on the judgment in this matter – would be irreparable.").

**(3) The balance of equities tips in Plaintiff's favor.**

The balance of equities tips in Plaintiff's favor because Plaintiff is the party who appears to have been defrauded into wiring $600,000 for the business that McEvoy admitted to the bankruptcy court was essentially worthless and the injunctive relief sought will merely preserve the status quo. That is, Plaintiff's purchase money, will be frozen. *See Oncology Associates*, 198 F.3d at 492, 494; *Deckert*, 311 U.S. at 290. Plaintiff, who has been demonstrated here to be likely

to prevail, will not yet receive it, and McEvoy and Strada Group, LLC, will not yet have to return it. Furthermore, in accordance with Rule 65(c), FRCP, Plaintiff will give security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Additionally, the freeze of a temporary restraining order is limited to fourteen days, under Rule 65(b)(2). *See Hayward*, 2024 WL 1587024, at *2. And even where an asset freeze is not subject to a fourteen-day limitation, courts have often found that the balance of hardships favors the party seeking the freeze. *Id.* (collecting cases) (*e.g., Chicago Title Co., LLC v. Wilson Re Servs., Inc.-Aegon*, No. 3:22-CV-566-MOC-DSC, 2022 WL 13979424, at *1 (W.D.N.C. Oct. 21, 2022); *BTL Indus., Inc. v. The Unincorporated Ass'ns Identified in Schedule A*, No. 123CV00673PTGJFA, 2023 WL 9105461, at *1 (E.D. Va. Dec. 20, 2023); *SEC v. SBM Inv. Certificates, Inc.*, No. 06-0866, 2007 U.S. Dist. LEXIS 12685, 2007 WL 609888 (D. Md. Feb. 23, 2007).

**(4) An injunction is in the public interest.**

It is in the public interest to require citizens who repeatedly take advantage of bankruptcies to be bound by the sworn statements they make to federal bankruptcy courts, and not be permitted to benefit from fraudulently selling businesses, depleting or transferring the purchase money obtained, and escaping responsibility through insolvency, gamesmanship with entities, and otherwise rending themselves judgment proof. *See e.g.*, McEvoy's Bankruptcy Petition (Dkt. 1-1) ("I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct . . . I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. U.S.C. §§ 152, 1341, 1519, and 3571."); *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) ("Judicial estoppel precludes a party from

11

adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.") (internal citation and quotation omitted); *Tidewater Finance Co. v. Williams*, 498 F.3d 249 (4th Cir. 2007) (discussing public concerns about "habitual bankrupts"); *In re Guajardo*, 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997) ("The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole."); South Carolina Business Opportunity Sales Act, S.C. Code § 39-57-20 (exemplifying legislative concern for the public interest regarding disclosures and the marketing and sales of businesses); *State Farm Mut. Auto. Ins. V. Am. Rehab & Physical Therapy, Inc.*, 376 F. App'x 182, 184 (3d. Cir. 2010) ("The public has an interest in the enforcement of judgments.").

### IV.    Conclusion

For the reasons set forth above, the Court **GRANTS** the motion and hereby issues this **TEMPORARY RESTRAINING ORDER,** stating its terms specifically, as follows:

(1) This Order freezes the bank account with Citizens Bank in the name of Strada Group, LLC ending in 5244, and any other bank accounts or other assets or proceeds held by or for McEvoy, Strada Group, LLC, or any other entity owned or controlled by McEvoy or Strada Group, LLC, and restrains any depletion, withdrawal, transfer, sale, encumbrance, or disposition of the same.

(2) This Order imposes a constructive trust over Plaintiff's purchase money and any other assets or proceeds into which it may have been converted or may be traced or attached.

(3) This Order binds only the following who receive actual notice of it by personal service or otherwise: the parties; the parties' officers, agents, servants, employees, and

attorneys; and other persons or entities who are in active concert or participation with any of the above, including but not limited to any such banks or other financial institutions.

(4) Defendants' violation of any term of this Order could result in a finding of contempt.

(5) The Court will hold a preliminary injunction hearing on Tuesday, August 5, 2025, at 1:00 p.m. This Order will expire at the conclusion of that hearing.

(6) As required by Rule 65(c), FRCP, the Court instructs Plaintiff to give security in an amount of $500.00, which the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

(7) This Order is issued on the date of July 25, 2025, at the hour of 4:00 p.m.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**July 25, 2025**
**Charleston, South Carolina**